IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

**CONRAD ENGWEILER**,

    Plaintiff,

v.

**KRISTEN WINGES-YANEZ**, chair of the Oregon Board of Parole and Post Prison Supervision, and the two board members **SID THOMPSON** and **MICHAEL WU**, in their official capacities,

    Defendants.

**Civ. No. 6:14-cv-00120-MC**

**OPINION AND ORDER**

_____

**MCSHANE, Judge**:

Plaintiff Conrad Engweiler is a prisoner of the Oregon Department of Corrections and is currently confined at the Oregon State Correctional Institution in Salem, Oregon. Pl.'s First Am. Compl. 2, ECF No. 7. Plaintiff, currently scheduled for an "exit interview"[1] hearing on May 13, 2014, seeks to enjoin the Oregon Board of Parole and Post-Prison Supervision (Board) from (1) ordering a second psychological evaluation, and (2) disallowing plaintiff to call witnesses.

The Court is asked to consider whether these practices violate plaintiff's procedural due process rights under the Fourteenth Amendment. Because Oregon's "exit interview" procedures satisfy due process, this Court finds that plaintiff failed to state a claim upon which relief can be granted and has not met his preliminary injunctive relief burden under *Winter v. Natural Res.*

---

[1] An Exit Interview, as defined in plaintiff's "Notice of Rights Packet," is an "[i]nterview with the inmate to determine whether to affirm or defer inmate's projected parole release date. Projected parole release date may be affirmed, or postponed for no fewer than 2 years or no more than 10 years from the current projected parole release date." Pl.'s Mem. in Supp. of Prelim. Inj. Relief 2, ECF No. 13-9.

1 – OPINION AND ORDER

*Def. Council, Inc.*, 555 U.S. 7 (2008).[2] Thus, plaintiff's motion for preliminary injunction, ECF No. 12, is DENIED, and defendants' motion to dismiss for failure to state a claim, ECF No. 17, is GRANTED with prejudice.

## STANDARD OF REVIEW

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual matter that "state[s] a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible on its face when the factual allegations allow the court to infer the defendant's liability based on the alleged conduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). The factual allegations must present more than "the mere possibility of misconduct." *Id.* at 678.

While considering a motion to dismiss, the court must accept all allegations of material fact as true and construe in the light most favorable to the non-movant. *Burgert v. Lokelani Bernice Pauahi Bishop Trust*, 200 F.3d 661, 663 (9th Cir. 2000). However, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). If the complaint is dismissed, leave to amend should be granted unless the court "determines that the pleading could not possibly be cured by the allegation of other facts." *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995) (citations and internal quotation marks omitted).

## DISCUSSION

Plaintiff seeks to enjoin the defendants from violating his procedural due process rights under the Fourteenth Amendment Due Process Clause. In particular, plaintiff contends that

---

[2] To obtain a preliminary injunction the moving party must show "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter*, 555 U.S. at 20.

2 – OPINION AND ORDER

defendants violate his procedural due process rights in the context of parole release (exit interview), by: (1) possibly requiring him to submit to a second psychological evaluation and (2) disallowing him from calling witnesses.

"As for the Due Process Clause, standard analysis under that provision proceeds in two steps: We first ask whether there exists a liberty or property interest of which a person has been deprived, and if so we ask whether the procedures followed by the State were constitutionally sufficient." *Swarthout v. Cooke*, 131 S. Ct. 859, 861 (2011) (citing *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989)).

"[S]tate statutes may create liberty interests in parole release that are entitled to protection under the Due Process Clause." *Bd. of Pardons v. Allen*, 482 U.S. 369, 371 (1987). "Whatever liberty interest exists is, of course, a *state* interest created by [Oregon] law. There is no right under the Federal Constitution to be conditionally released before the expiration of a valid sentence, and the States are under no duty to offer parole to their prisoners." *Swarthout*, 131 S. Ct. at 862 (emphasis in original). Under relevant portions of ORS § 144.120[3] and ORS § 144.125,[4] plaintiff "is entitled to be released unless the [B]oard is persuaded that he has a present

---

[3] ORS § 144.120 (1989), in relevant part, states:

> (1)(a) Within six months of the admission of a prisoner to any Department of Corrections Institution, with the exception of those prisoners sentenced to a term of imprisonment for life or for more than five years . . . . *For those prisoners sentenced to a term of imprisonment for life or for 15 years or more, the board shall conduct the parole hearing, and shall set the initial release date, within one year following admission of the prisoner to the institution.* Release shall be contingent upon satisfaction of the requirements of ORS 144.125.

(emphasis added).

[4] ORS § 144.125 (1989), in relevant part, states:

> (1) Prior to the scheduled release of any prisoner on parole and prior to release rescheduled under this section, the board may upon request of the Department of Corrections or on its own initiative interview the prisoner to review the prisoner's parole plan and psychiatric or

severe emotional disturbance that constitutes a danger to the health or safety of the community." *Stogsdill v. Bd. of Parole & Post-Prison Supervision*, 342 Or. 332, 336 (2007) (citing ORS § 144.245).[5] Assuming this "entitlement" represents a sufficient liberty interest, this Court next looks to the constitutionality of (1) defendants' possible use of a second psychological evaluation and (2) defendants' policies disallowing plaintiff from calling witnesses.

## I. Defendants' Use of a Second Psychological Evaluation

Plaintiff asserts that defendants' policy of conducting a second psychological evaluation after an initial "positive" psychological evaluation, constitutes "pre-judging," and violates the Due Process Clause. Pl.'s First Am. Compl. 8, ECF No. 7. This Court disagrees.

As an initial matter, this Court notes that "a mere error of state law is not a denial of due process." *Swarthout*, 131 S. Ct. at 863 (citations and internal quotation marks omitted). Engweiler's liberty interest, assuming that it exists, arises under *Oregon* law. Under Oregon law, there is no indication that the Board is limited to a single psychological evaluation. *See, e.g.*, ORS § 144.125(3) (1989); *Colby v. Thompson*, 183 Or. App. 311, 320 (2002) (finding that the Oregon legislature, in codifying ORS § 144.226(1), did not intend to limit the number of psychological evaluations that the Board could order because the statute used the singular "a" in

---

> psychological report, if any, and the record of the prisoner's conduct during confinement . . . .
>
> (3) If a psychiatric or psychological diagnosis of present severe emotional disturbance such as to constitute a danger to the health or safety of the community has been made with respect to the prisoner, the board may order the postponement of the scheduled parole release until a specified future date.

[5] ORS § 144.245, in relevant part, states:

> (1) When the . . . [Board] has set a date on which a prisoner is to be released upon parole, the prisoner *shall* be released on that date unless the prisoner on that date remains subject to an unexpired minimum term during which the prisoner is not eligible for parole . . . .

(emphasis added).

4 – OPINION AND ORDER

reference to a psychological examination). Even had the Board been so restricted, it is not this Court's responsibility to determine whether the "procedures governing [Oregon's] parole system are properly applied . . . ." *Swarthout*, 131 S. Ct. at 863.

The issue, therefore, is whether the Board can lawfully order a second psychological evaluation if a first psychological evaluation is "positive."[6] This Court answers in the affirmative.

Plaintiff does *not* contest the accuracy of any second psychological evaluation referenced. Rather, plaintiff merely alleges that the Board, by automatically requiring a second evaluation, violates his due process rights. However, the Due Process Clause does not authorize this Court to limit Oregon to one, two, or even three psychological evaluations. *Cf*. *Sandin v. Conner*, 515 U.S. 472, 482 (1995) ("[F]ederal courts ought to afford appropriate deference and flexibility to state officials trying to manage a volatile environment."). Rather, assuming a liberty interest has arisen, the Due Process Clause imposes only "minimal" procedures such as "an opportunity to be heard" and a "statement of the reasons why parole was denied." *Swarthout*, 131 S. Ct. at 862; *see also infra* § II (discussing the rights afforded during plaintiff's exit interview). To the extent that Engweiler contests the alleged heightened parole release burden (e.g., the heightened risk of a diagnosis of present severe emotional disturbance posed by an additional evaluation), this Court is not persuaded. Oregon could easily and lawfully have placed the evidentiary burden on Engweiler himself. *See, e.g.*, *Miller v. Oregon Bd. of Parole & Post Prison Supervision*, 642 F.3d 711, 713, 717 (9th Cir. 2011) (upholding ORS § 163.105, Oregon's murder review hearing, which required the prisoner to "prov[e] by a preponderance of the evidence the likelihood of

---

[6] This Court notes that, at the date of this opinion, plaintiff has not received the results of his first psychological evaluation. Likewise, the Board has not ordered a second psychological evaluation.

5 – OPINION AND ORDER

rehabilitation"). Accordingly, because the Due Process Clause does not prevent the Board from ordering a second psychological evaluation, plaintiff failed to state a claim upon which relief can be granted.

## II. Plaintiff's Right to Call Witnesses

Plaintiff generally asserts that defendants' "policies, procedures and rules" violate the Due Process Clause because they "do not allow the prisoner to call witnesses, cross-examine anyone who has provided information to the Board, cross-examine the psychologist, nor submit witness testimony . . . ." Pl.'s First Am. Compl. 8, ECF No. 7. To support this assertion, plaintiff directs this Court's attention to *Wolff v. McDonnell*, 418 U.S. 539 (1974).[7]

In *Wolff*, the Court discussed a Nebraska statute that "provided a statutory right to good time . . . [and] also specifie[d] that [good time] is to be forfeited only for serious misbehavior." 418 U.S. at 557. The *Wolff* Court, having found Nebraska's procedures insufficient,[8] held that Wolff was entitled to: (1) written notice of the charges against him at least 24 hours prior to the hearing appearance; (2) a written statement of the factfinders as to the evidence relied upon and

---

[7] Plaintiff also references *McQuillion v. Duncan*, 306 F.3d 895 (9th Cir. 895). However, the analysis in *McQuillion* is largely overruled by the Supreme Court's decision in *Swarthout*, 131 S. Ct. at 863. *See, e.g.*, *Pearson v. Muntz*, 639 F.3d 1185, 1191 (9th Cir. 2011) ("[Swarthout] makes it clear that we cannot consider whether 'some evidence' of dangerousness supported a denial of parole on a petition filed under 28 U.S.C. § 2254."). In *Swarthout*, the Court noted "[t]he short of the matter is that the responsibility for assuring that the constitutionally adequate procedures governing California's parole system are properly applied rests with California courts, and is no part of the Ninth Circuit's business." 131 S. Ct. at 863.

[8] At that time, the procedures employed included:

> (1) a preliminary conference with the Chief Corrections Supervisor and the charging part, where the prisoner is informed of the misconduct charge and engages in preliminary discussion on its merits; (2) the preparation of a conduct report and a hearing before the Adjustment Committee . . . where the report is read to the inmate; and (3) the opportunity at the hearing to ask questions of the charging party.

*Wolff*, 418 U.S. at 558–559.

6 – OPINION AND ORDER

the reasons for action taken; and (3) a restricted right[9] to call witnesses and present documentary evidence. *Id*. at 564–567. Notably, the Court explicitly held that "the Constitution should not be read to impose [cross-examination] at the present time." *Id*. at 568. Plaintiff seeks this *Wolff*-type right to call witnesses. This Court is not persuaded.

Defendants direct this Court's attention to *Greenholtz v. Inmates of Nebraska Penal & Corr. Complex*, 442 U.S. 1 (1979), and *Swarthout*. In *Greenholtz*, the Court considered a Nebraska statute that provided "discretionary parole."[10] If a prisoner was eligible for "discretionary parole," the Board of Parole would conduct either an "initial review hearing" or "final hearing."

At the "initial review hearing," the "Board examines the inmate's entire preconfinement and postconfinement record. Following that examination, [the Board] provides an informal hearing; no evidence as such is introduced, but the Board interviews the inmate and considers any letters or statements that he wishes to present in support of a claim for release." *Id*. If the Board determined from its examination of the record and personal interview that an inmate is "not yet a good risk for release,"[11] it denied parole, "defer[ed] release," and "inform[ed] the

---

[9] The *Wolff* Court limited Wolff's right to circumstances "when permitting [Wolff] to do so will not be unduly hazardous to institutional safety or correctional goals." 418 U.S. at 566. The Court further discussed the "obvious potential for disruption and for interference" and possible "risk of reprisal or undermine authority." *Id*.

[10] The Court distinguished between "mandatory" and "discretionary" parole. Parole was "mandatory" or rather "automatic[,] when an inmate has served his maximum term, less good-time credits." 4. In contrast, parole was "discretionary" when "[a]n inmate becomes eligible for discretionary parole when the minimum term, less good-time credits, has been served." *Id*.

[11] The *Greenholtz* Court found:

> "Whenever the Board of Parole considers the release of a committed offender who is eligible for release on parole, it shall order his release unless it is of the opinion that his release should be deferred because:
>
> (a) There is substantial risk that he will not conform to the conditions of parole;
> (b) His release would depreciate the seriousness of his crime or promote disrespect for law;
> (c) His release would have a substantially adverse effect on institutional discipline; or

7 – OPINION AND ORDER

inmate why release was deferred and makes recommendations designed to help correct any deficiencies observed." Following this deferral, the Board "schedule[d] another initial review hearing to take place within one year." *Id.* at 5.

In contrast to the "initial review hearing," the "final hearing" was held "[i]f the Board determine[d] from the file and the initial review hearing that the inmate is a likely candidate for release." *Id.* At the "final hearing," an inmate was entitled to more robust procedural rights, including: (1) right to present evidence; (2) call witnesses and be represented by private counsel of his choice; (3) notice the day of hearing; (4) a complete tape recording; and (5) a written statement of the reasons for the denial. *Id.*

The *Greenholtz* Court, in assessing the constitutionality of the "initial review hearing," found that Nebraska "afford[ed] the process that is due under the[] circumstances." Although plaintiff contends that *Greenholtz* is distinguishable, this Court notes the similarities. As in *Greenholtz*, plaintiff was eligible for "discretionary" parole because he had served his minimum term, less good-time credits. *See* Pl.'s First Am. Compl. 3, ECF No. 7. The *Greenholtz* Court explicitly considered and upheld the constitutionality of the protections provided at the "initial review hearing." That hearing, much like plaintiff's "exit interview hearing," empowered the Board to deny or defer plaintiff's projected parole release date. Any additional protections accorded to the *Greenholtz* inmates at the "final hearing" only arose if the inmates in fact "passed" the "initial hearing."

---

> (d) His continued correctional treatment, medical care, or vocational or other training in the facility will substantially enhance his capacity to lead a law-abiding life when released at a later date.

442 U.S. at 11 (citations and internal quotation marks omitted).

8 – OPINION AND ORDER

Similar to *Greenholtz*, in *Swarthout*, the Supreme Court considered a California parole statute that provided "that the Board of Prison Terms 'shall set a release date unless it determines that . . . consideration of the public safety requires a more lengthy period of incarceration.'" 131 S. Ct. at 860 (citations omitted). In reversing the Ninth Circuit, the Court noted:

> In the context of parole, we have held that the procedures required are minimal. In Greenholtz, we found that a prisoner subject to a parole statute similar to California's received adequate process when he was allowed an opportunity to be heard and was provided a statement of the reasons why parole was denied. The Constitution, we held, does not require more. Cook and Clay received at least this amount of process: They were allowed to speak at their parole hearings and to contest the evidence against them, were afforded access to their records in advance, and were notified as to the reasons why parole was denied.
>
> That should have been the beginning and the end of the federal habeas courts' inquiry into whether Cooke and Clay received due process.

*Swarthout*, 131 S. Ct. at 862 (citations and internal quotation marks omitted)

This Court, in reliance on *Greenholtz* and *Swarthout*, finds that Oregon's "exit interview hearing" procedures satisfy due process. Plaintiff's rights include: (1) access to his records (parole packet) at least 14 days prior to his hearing; (2) the opportunity to submit written information to the Board and make a statement during the hearing; (3) written notification of the Board's decision and statement of the reasons for denial; (4) the right to an attorney at his own expense; (5) the right to submit a psychological evaluation at his own expense; and (6) access to an audio recording of the entire hearing. *See* Pl.'s Mem. in Supp. of Prelim. Inj. Relief 4–7, ECF No. 13-9; *McClure v. Premo*, No. 1:11–cv–00695–PK, 2013 WL 3347370, at *4–5 (D. Or. June 28, 2013) (finding that Oregon's exit interview procedures satisfied due process); *see also Miller*, 642 F.3d at 717 (upholding Oregon murder review statute because Miller was afforded "access to his records[,] . . . given the opportunity to submit information to the Board and make a

9 – OPINION AND ORDER

statement during the hearing[,] . . . [and] provided with a written statement of the reasons why he was denied."). Accordingly, because due process does not entitle plaintiff to "call witnesses, cross-examine anyone who has provided information to the Board, cross-examine the psychologist, []or submit witness testimony[,]" he failed to state a claim upon which relief can be granted.

## CONCLUSION

For these reasons, plaintiff's motion for preliminary injunction, ECF No. 12, is DENIED, and defendants' motion to dismiss for failure to state a claim, ECF No. 17, is GRANTED with prejudice.[12]

IT IS SO ORDERED.

DATED this 10th day of April, 2014.

_____s/ Michael J. McShane_____
**Michael J. McShane**
**United States District Judge**

---

[12] This Court, having considered the uncontested procedural protections afforded plaintiff, finds that the pleading could not possibly be cured by the allegation of other facts.

10 – OPINION AND ORDER